# Lehigh Crane Iron Company *versus* The Commonwealth.

1. The bringing of a suit by the Commonwealth is sufficient notice of a settlement against the defendant under the Act of March 30th 1811.

2. A corporation began with a capital of $100,000, which was increased to $1,000,000 out of its profits, the increase being invested in improvements, &c., but the increase was not formally divided amongst the stockholders. The $900,000 increase was liable to tax as dividends.

3. The dividend is not the true subject of taxation, although it is the legal standard, under the Act of April 29th 1844. The tax is chargeable on the capital stock and the profit is used only to measure its value.

May 23d 1867.    Before WOODWARD, C. J., THOMPSON, READ, and AGNEW, JJ.    STRONG, J., absent.

[Lehigh Crane Iron Co. *v.* The Commonwealth.]

Error to the Court of Common Pleas of Dauphin county. This was an action of debt to April Term 1866, by the Commonwealth, of Pennsylvania against the Lehigh Crane Iron Company. The declaration was that the defendant was indebted to the Commonwealth in the sum of $45,000, "on an account examined, adjusted, settled and signed by the auditor-general of this Commonwealth, and duly entered in the books of his office, as authorized and required by law, on the 20th day of July 1865, in which the said sum of forty-five thousand dollars is due and owing the said plaintiff from the said defendants, with interest thereon from the 20th day of October 1865, for tax on capital stock, which said account was, on the 20th day of July 1865, submitted to, revised and approved by the state treasurer, and a copy thereof, within thirty days thereafter, sent by the said auditor-general, under his hand and seal of office, to the said defendants, and which yet remains in full force against the said defendants, and unappealed from." The account settled against the defendant was filed with the declaration.

The account, besides tax which was not disputed, was the following :—

1845.  The company distributed $100,000 of surplus profits among the stockholders, and thereby increased their capital stock to $200,000. Tax 50 mills on $100,000, . . . . .                5,000.00
1854.  Dividend $300,000, added to capital as before. Tax 75 mills on $200,000, . . . .              15,000.00
1863.  Dividend $500,000, added to capital as before. Tax 50 mills on $500,000, . .              25,000.00

Due Commonwealth, . . . . $45,000.00

Settled by the auditor-general, July 20th 1865, and approved by the state treasurer the same day.

The company went into operation in the year 1836. Its original capital was $100,000, which was all paid in. From its profits it enlarged its business, erected new buildings, &c., and in this manner, up to 1865, invested $900,000 in addition to the original capital, thus increasing the capital to $1,000,000. They declared dividends at the rate of 6 per cent. on the capital, as it was from time to time increased, and on those dividends paid tax. The claim of the Commonwealth was on the $900,000 as dividends.

On the trial there was a question raised whether the defendants had received notice of the settlement of their account, and evidence as to this question was given by both parties.

The court (Pearson, P. J.) charged :—

"That bringing suit is sufficient notice under the statute. We instruct you that the settlement is conclusive, and your verdict

5 P. F. Smith—29

[Lehigh Crane Iron Co. *v.* The Commonwealth.]

must be in favor of the commonwealth for forty-five thousand dollars, with interest from the 20th day of October 1865.

" This company has lost nothing by omitting to appeal.   After increasing the capital stock at different times until it amounted to —— dollars, the corporation made a dividend in the form of stock amounting to a sum the tax on which, computed as a dividend in money, was $45,000, and now contends that this is not such a dividend as is subject to taxation.   We are unable, on principle, to see any difference between a *stock* and a *cash* dividend ; and we have direct authority in the decision of our own Supreme Court, declaring that there is none."

The verdict was for the Commonwealth for $47,985.   The defendants took a writ of error and assigned for error the portions of the charge above stated.

*J. C. Kunkel* (with whom was *J. W. Simonton*), for plaintiff in error, cited Act 30th March 1811, § 38, Purd. 820, 5 Sm. 236 ; Hays *v.* The Commonwealth, 3 Casey 272 ; Hultz v. Same, 3 Grant 61 ; Philadelphia *v.* Same, 2 P. F. Smith 451 ; Bridge *v.* Frailey, 13 S. & R. 422 ; Commonwealth *v.* Holmes, 1 Jones 468 ; Commonwealth *v.* Duffield, 2 Id. 277 ; Canal Company *v.* Commonwealth, 7 Wright 227 ; Pennsylvania Bank Accounts, 3 Id. 110.

*Brewster*, Attorney-General, for Commonwealth, cited Act of March 30th 1811, Purd. 820, 5 Sm. L. 236 ; Spangler *v.* Commonwealth, 8 Watts 57 ; Hutchinson *v.* Commonwealth, 6 Barr 124 ; Commonwealth *v.* Reitzel, 9 W. & S. 112 ; Hays *v.* The Commonwealth, 3 Casey 272 ; Hultz *et al. v.* The Commonwealth, 3 Grant 61 ; Philadelphia *v.* The Commonwealth, 2 P. F. Smith 451 ; Commonwealth *v.* Cleveland, Painesville and Ashtabula Railroad Company, 5 Casey 373.

The opinion of the court was delivered, May 27th 1867, by

AGNEW, J.—Notwithstanding some technical objections which can be set up, it cannot be denied that the bringing of a suit ought to impel a party upon whom the writ has been served to ascertain, if not already informed, what has been settled against him by the auditor-general and state treasurer, and to appeal if he thinks himself injured.   It is sufficient to say, however, we look upon this point as settled by authority : Hays *v.* Commonwealth, 3 Casey 272 ; Hultz *v.* Commonwealth, 3 Grant 61 ; City of Philadelphia *v.* Commonwealth, 2 P. F. Smith 451.

This corporation began business with a capital of $100,000. It is not denied that it has taken from its profits actually earned the sum of $900,000, added it to the original capital, and from time to time declared and paid dividends to the stockholders upon the capital as it was thus increased.   The auditor-general and

[Lehigh Crane Iron Co. *v.* The Commonwealth.]

state treasurer have charged, under the Act of 12th April 1859, a tax of one-half mill upon every one per cent. of the profits thus added to the capital, and the court below sustained the charge. This is according to the spirit and intention of both the Acts of 1844 and 1859, and is substantial justice. The earnings of the original capital clearly belonged to the owners of the stock, in the proportion of their shares. So long as they remained in the profit and loss account, there was no division, express or implied. But when added to the capital, and made the basis of dividends to the stockholders, it is clear that they reaped their actual benefit, both in the receipt of new profits and the increased value of their stock to the amount of the superadded capital. Had the corporation expressly declared this surplus a dividend in stock, it would have been taxable according to authority: Commonwealth *v.* C. P. & A. Railroad Co., 5 Casey 370. But what is the difference whether the thing be done by a formal resolution, denominating it a stock dividend, or by actually making it stock, and giving the stockholder the full benefit of it? He has no certificate to denote his new stock, but he has the stock itself, realizes its profits, and can dispose of it as its real owner.

Nor is the dividend the true subject of taxation, although it is the legal standard. The 33d section of the Act of 29th April 1844 provides that the tax *chargeable on the capital stock* on which a dividend or profit shall be made and declared of 6 per cent. or more, shall be one half mill on each 1 per cent. of such dividend *or profit.* The profit is thus used only to measure the value of the capital stock. This is rendered more evident by the provisions immediately following, for the valuation of the stock by appraisement, when the dividends fall below 6 per cent., and charging upon the appraised value a tax of three mills on the dollar; a sum precisely equivalent to the half mill of each 1 per cent. of dividend when at 6 per cent. It is made still more obvious by the Act of 1859, which charges *upon the capital* a tax of one half mill for each 1 per cent. of dividend made *or* declared; and provides for a valuation when no dividend is declared. It is evident, therefore, that the intention of the legislature was to levy the tax upon the capital stock according to its value, and that the dividend of profit earned by the stock was but a means of ascertaining its value. But as this means of measurement lies entirely in the hands of the corporation, to hold that it may put its stockholders into the actual possession and enjoyment of the profits, without formally declaring a dividend, and thereby escape taxation, would be to enable it to defraud the revenue. This case itself clearly illustrates how unjust such a rule would be. On $100,000 this company has actually earned 900 per cent., upon which, as profits, the Commonwealth is entitled to one half mill upon every 1 per cent. To enable it to escape taxation by

[Lehigh Crane Iron Co. *v.* The Commonwealth.]

calling the profits capital, is mere legerdemain, when the sum is in fact added to the stock of the shareholders, and dividends paid upon the entire sum. It is manifest this is a substantial distribution of these profits, and what is this but *making* a dividend, whether it is *declared* to be done or not; and the law provides for a dividend *made*. Although not alike in the facts, the principle of this case does not differ from that of the Citizens' Passenger Railroad Co. *v.* City of Philadelphia, 13 Wright 251, where, on a paid-up capital of $192,750, dividends were declared upon a nominal capital of $500,000, in order to escape the tax on surplus dividends over 6 per cent., by this means lessening the rate of the dividend, and absorbing that to which the city was fairly entitled, after paying to the stockholders six per cent. upon their actual investment.

Judgment affirmed.